BEATTY, Justice.
This is an appeal from a declaratory judgment in a suit brought by the appellant, Ranger Insurance Company (“Ranger”), against Darwin Lee Whitlow. In its action for declaratory relief, Ranger sought a declaration that it could deny coverage and not provide a defense to Whitlow, its named insured, for his accident with Thomas J. Rohan on August 14, 1985. Rohan had previously filed suit against Whitlow for damages arising out of that accident; Whitlow’s demand that Ranger provide him with a defense in Ro-han’s suit precipitated this action. Ranger later amended its complaint for declaratory relief and added Rohan as a party in interest, in order to stay Rohan’s suit.
The matter was heard by the trial court in an ore terms hearing. After hearing testimony and receiving evidence, the trial court determined that Ranger owed Whit-low coverage and a defense for the accident. Ranger appealed. We affirm.
Ranger’s policy, in applicable part, provided under Part A, “Liability Coverage”:
“We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. Our duty to settle or defend ends when our limits of liability for this coverage [have] been exhausted.
“ ‘Covered person’ as used in this Part means:
“1. You or any family member for the ownership, maintenance or use of any auto or trailer.”
Ranger does not dispute that Whitlow, as its named insured, was a “covered person” under this policy. Rather, Ranger contends that it does not owe Whitlow coverage and a defense under its policy because of the following:
“EXCLUSIONS
“We do not provide Liability Coverage:
“9. For the ownership, maintenance or use of any vehicle, other than your covered auto, which is owned by you or furnished or available for your regular use.”
The section entitled “Definitions” in Ranger’s policy defines “your covered auto” to mean:
“(a) Any vehicle shown in the Declarations.
“(b) Any of the following types of vehicles of which ysu acquire ownership during the policy period, provided that you ask us to insure it within thirty days after you become the owner:
“(1) a private passenger auto.
“(2) if not used in any business or occupation, a pickup, panel truck, or van.
“If the vehicle replaces one shown in the Declarations, you have to ask us to in *1340 sure it within thirty days only if you wish Damage to Your Auto Coverage to apply to the replacing vehicle.
“(c) Any trailer you own.
“(d) Any auto or trailer you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its breakdown, repair, servicing, loss or destruction.” (Emphasis added.)
At the hearing, Ranger argued that the 1975 GMC truck that Whitlow was driving at the time of his accident did not meet any of the criteria of a “covered auto.” To support this contention, Ranger submitted into evidence a copy of the police report made at the time of the accident; that report listed Whitlow as the owner of the GMC truck. The accident report also reflected that the vehicle was towed to Whit-low’s residence after the accident. Finally, Ranger introduced into evidence a copy of the certificate of title to this vehicle designating Darwin Whitlow as the owner of this vehicle on the date of the accident. His status as owner of the truck did not change until November 15, 1985. On that date, the Alabama Department of Revenue changed the title to show ownership of the truck in Darwin Whitlow’s father, Glen H. Whitlow. Thus, Ranger argued that since the truck was not “a covered auto” as defined by its policy and since the vehicle was titled in the name of Darwin Whitlow at the time of the accident, exclusion number nine would preclude Ranger’s coverage for Whitlow for that accident and, consequently, Ranger’s duty to defend him in the action filed by Rohan.
The trial judge also heard testimony and received evidence from Darwin Whitlow, his wife Tammy, and his parents, Glen and Claudia Whitlow. These individuals testified that Darwin Whitlow purchased the used GMC truck from Mike Layton in October 1983. The truck served as Whitlow’s sole means of transportation until May 1984, at which time he obtained a 1977 Oldsmobile Cutlass. This Cutlass was purchased for Darwin by his parents as a reward for his receiving a G.E.D., or high school equivalency certificate. Having a newer car, Whitlow then sold the truck to his father.
Whitlow married in August 1984 and moved out of his parents’ house. Nevertheless, the truck remained garaged at his parents’ house. Whitlow testified that he did not take it with him when he moved because the truck was no longer his.
As proof of ownership, Glen and Claudia Whitlow produced a bill of sale dated June 10, 1984, which described the GMC truck with particularity. This bill of sale was signed by Darwin L. Whitlow, as the seller, and Glen H. Whitlow, as the buyer. Glen and Claudia Whitlow testified that this bill of sale was executed by the parties approximately two weeks after Darwin sold the truck to his father. Darwin, Glen, and Claudia Whitlow each denied that they had executed the bill of sale after the accident or that they had backdated the instrument in any way. Rather, they testified that the date on the bill of sale correctly reflected the date of its execution.
Glen and Claudia Whitlow also testified that Glen had used the truck daily in his work as an insurance salesman for the first few months after its acquisition from their son. They produced documentation, which was admitted into evidence, that established that they had added the truck to their automobile insurance policy on May 20, 1984. Later in 1984, Glen purchased another automobile for work purposes. Accordingly, he relegated the truck’s use to hauling firewood once or twice a year and ultimately cancelled the insurance on the truck. Nonetheless, the truck remained garaged exclusively at the home of Glen Whitlow. Furthermore, all of the Whitlows testified that from May 1984 to the date of the accident, Darwin Whitlow had never borrowed or driven this truck.
In October 1984 and October 1985, the license tags for the truck were purchased by Glen and Claudia Whitlow, although Glen conceded that he knew the title and the tag receipts were still in his son’s name.
“Q. And Glen, let me ask you about this Bill of Sale that was delivered to *1341 you. Was that done prior to the accident?
“A. It was done in June, I believe.
“Q. Of what year?
“A. Of ’84.
“Q. Now, at the time that you got the truck, got the Bill of Sale, did you have a Certificate of Title changed with the State?
“A. No. We did later on.
“Q. Did you continue to buy the tags for this truck?
“A. Yes.
“Q. Did you know at the time you were buying the tags for the truck that it was still in Darwin’s name?
“A. What year do you mean?
“Q. ’85 and ’86, the tags were bought in ’84 and ’85.
“A. We knew it was, yes.
“Q. You left it in his name and bought the tags?
“A. Yes.
“Q. You bought the tags for the other automobiles at the same time?
“A. Right.”
Glen and Claudia Whitlow also conceded that the actual transfer of the title on the truck did not occur until after the accident. Claudia Whitlow testified:
“Q. Do you know anything about a Certificate of Title about that time [soon after the accident], Mrs. Whitlow?
“A. We just re.lized we had never had it done, never had it changed to our names. So we took the certificate and got Darwin to sign it and mailed it to Montgomery and I didn’t have it back when [the insurance agent] called me to get those things.”
Glen Whitlow explained their failure to transfer that title in a similar fashion. Responding to the question, “Do you have any explanation why you did not have a Certificate of Title changed and the license receipt changed?” he answered:
“A. Well, when you have children you don’t worry about like you would if it was a neighbor or a friend.... Whether we had the truck in his name or ours didn’t make any difference because he’s an honest person and I try to do what is right. There was no problem.
“Q. Is it one of those things you had not done?
“A. Just hadn’t done it. I’ve done it before and it’s not good. You shouldn’t do it. But I know from now on I will.”
As other indicia of ownership, Glen Whit-low produced a cancelled check dated May 1985 that reflected payment for his having had the truck repainted. He also testified that he thought he had the only set of keys to the vehicle and that he considered himself to be the true owner of the truck. The other three Whitlows also testified that they considered Glen Whitlow to be the true owner of the truck.
Darwin Whitlow testified that on the day of the accident he needed a vehicle with a trailer hitch so that he could transport the family’s boat to the Warrior River. Although his personal vehicle had a trailer hitch on it, it was unavailable on that particular day because its windshield was being replaced. Whitlow stated that the only other vehicle with a trailer hitch was the GMC truck. Thus, he said, he had his wife drive him to his father’s house, where, after repairing a flat tire on the truck and using an extra set of keys that he had kept, he borrowed the truck. He admitted that he did not specifically ask his parents’ permission to use the truck and, in fact, did not even know if they were aware that he had taken it. His parents corroborated his testimony. According to them, they first became aware of the fact that Whitlow had taken the truck when they learned of his accident.
Finally, in order to partially rebut Ranger’s contention of Darwin Whitlow’s ownership of the truck, Glen Whitlow explained that Darwin had had the truck and trailer towed to his house so that he could repair the damage that resulted from the accident. After he had completed the repairs, Darwin returned the truck to his father’s house, where it had remained.
Darwin Whitlow and his family testified that he was not the owner of the truck, even though it was still titled in his name, and that the truck was not furnished or *1342 available for his regular use. Accordingly, Darwin argued that exclusion number nine was inapplicable. Additionally, he submitted that Ranger should afford coverage on the GMC truck because it was a “covered auto” under his insurance policy, since, he argued, it qualified as a temporary substitute vehicle.
At the conclusion of this ore tenus hearing, the court issued the following findings and conclusions:
“ORDER
“This cause was heard on May 12, 1986, on plaintiffs bill for declaratory judgment. All parties appeared and were represented by counsel, sworn testimony was taken. The Court having heard and considered the evidence, pleadings and proof, finds that the following facts and order are due to be rendered:
“That the plaintiff, Ranger Insurance Company, through its agent, Gerald Hicks, d/b/a Hicks Insurance Company, undertook to provide automobile liability and collision coverage to defendant, Darwin Lee Whitlow, said coverage insuring any auto driven by but not owned by insured while insured’s primary vehicle is out of its normal use because of breakdown, repair, servicing, loss or destruction.
“That, despite plaintiffs excellent brief to the contrary, defendant did not own the truck he was operating on the date of the accident; it was merely a temporary substitute for his primary vehicle. Though defendant did hold the certificate of title on the date of the accident, it is the Court’s determination that defendant’s father was the true owner of the truck.
“That defendant’s primary vehicle was out of its normal use on date of defendant’s accident. Therefore the plaintiff was on the risk on that date while defendant operated his father’s truck and is required to specifically perform all acts under a policy of insurance issued April 3, 1985, incorporated in this order the same as if fully spelled out herein.”
Section 32-8-44, Code of 1975, provides that Whitlow should have executed an assignment and warranty of title in his father’s favor when he sold him the GMC truck. Furthermore, Glen Whitlow should have executed an application for new title for the truck in his name; nevertheless, the parties concede that they did not do this.
We recognize that § 32-8-44(e) provides:
“Except as provided in section 32-8-45, and as between the parties, a transfer by an owner is not effective until the provisions of this section have been complied with.”
However, it has been held that § 32-8-44 is not the exclusive method of passing title to an automobile. Congress Finance Corp. v. Funderburk, 416 So.2d 1059 (Ala.Civ. App.1982). Furthermore, the non-delivery of a certificate of title at the time of the sale does not prevent the passage of title from the seller to the buyer. Wood Chevrolet Co. v. Bank of the Southeast, 352 So.2d 1350 (Ala.1977). See also Ledbetter v. Darwin Dobbs Co., 473 So.2d 197 (Ala. Civ.App.1985); Eleven Autos v. State ex rel. Graddick, 384 So.2d 1129 (Ala.Civ.App.1980). The certificate of title only “establishes prima facie title in the person whose name appears on the certificate. 14 Blash-field Automobile Law and Practice § 467.54 (3d ed. 1969),” Congress Finance Corp. v. Funderburk, 416 So.2d at 1062; this presumption of ownership can be rebutted by other indicia of ownership. Id. In Ledbetter v. Darwin Dobbs Co., 473 So.2d at 201, the Court of Civil Appeals held that “there is a transaction of purchase when there is delivery of possession from the seller to the buyer with the intent that the buyer become the owner.” In the instant case, whether Darwin and Glen Whitlow had the necessary intent for Glen to become the owner of the truck and whether the Whitlows presented sufficient indicia to rebut the prima facie presumption of ownership as evidenced by the certificate of title were for determination by the finder of fact.
As stated previously, the issue of ownership was tried ore tenus without a jury:
“In those cases where the trial court makes findings of fact after the evidence has been presented ore tenus and the *1343 trial has had the advantage of observing the demeanor of the witnesses, a presumption of correctness attends the findings of the trial court and those findings will not be disturbed on appeal if supported by the evidence or any reasonable inference therefrom, unless they are plainly and palpably erroneous and manifestly unjust. Chaffin v. Hall, 439 So.2d 67 (Ala.1983); Securitronics of America v. Bruno’s, Inc., 414 So.2d 950 (Ala.1982).”
Allstate Ins. Co. v. Shirah, 466 So.2d 940, 943 (Ala.1985). The issue of ownership of the 1975 GMC truck was not free from doubt. The trial court, sitting without a jury, was in a position to observe the demeanor of the witnesses and to evaluate the veracity of their testimony. In light of the consistent testimony from all of the Whitlows regarding the ownership of the 1975 GMC truck, we cannot hold that the findings of the trial court were not supported by any evidence or any reasonable inference therefrom. Accordingly, the judgment of the trial court is hereby affirmed.
AFFIRMED.
MADDOX, ALMON, ADAMS and HOUSTON, JJ., concur.