The primary issue in this appeal from a declaratory judgment is whether a vehicle the certificate of title to which is issued in *Page 1032 
the name of Williams Trucking, a sole proprietorship operated by Wendell Williams before he began operating as W W Trucking, is entitled to coverage as a temporary substitute vehicle under a policy of insurance issued by Carolina Casualty Insurance Company in the name of "W W Trucking, Wendell Williams d/b/a." The trial court entered a judgment declaring that Carolina Casualty owed coverage under the temporary-substitute provision of the policy. We reverse and remand for further proceedings.
 Facts
On May 28, 2004, Matthew Shields, an employee of W W Trucking, was driving a 1984 Mack dump truck. While Shields was driving, the dump truck collided with a vehicle being operated by Johnny Ray Bradley. Bradley and his minor son, a passenger in Bradley's vehicle, were injured. Bradley, individually and on behalf of his son, sued Williams d/b/a W W Trucking seeking to recover damages as a result of the accident.[1]
Williams filed a third-party complaint against Carolina Casualty, seeking a declaration that the 1984 Mack dump truck Shields was driving at the time of the accident was covered under a policy of insurance issued by Carolina Casualty to "W W Trucking, Wendell Williams d/b/a." That policy, a commercial transportation policy, was effective March 5, 2004, through July 29, 2004, and provided in pertinent part: "Section I — Covered Autos. Item Two of the Declarations shows the `autos' that are covered `autos' for each of your coverages." The policy also provided coverage for
 "any `auto' you do not own while used with the permission of its owner as a temporary substitute for a covered `auto' you own that is out of service because of its:
 "a. Breakdown;
 "b. Repair;
 "c. Servicing;
 "d. `Loss'; or
 "e. Destruction."
Williams asserted that the 1984 Mack dump truck was covered under the policy as a "temporary substitute" vehicle.
Carolina Casualty denied that the Mack dump truck was a temporary substitute vehicle under the policy and filed a counterclaim seeking a judgment to that effect. After discovery was conducted, Williams, Carolina Casualty, and Bradley filed motions for a summary judgment. The trial court conducted a hearing on those motions, at which time the parties requested that the trial court render its decision on the coverage issue based on the parties' evidentiary submissions. On August 11, 2005, the trial court issued an order severing the declaratory-judgment claim on the coverage issue from the liability claims.
On September 21, 2005, the trial court rendered its decision on the coverage issue and issued an order; the trial court concluded that the 1984 Mack dump truck was a "temporary substitute" vehicle as that term is defined in the Carolina Casualty policy and that the Mack dump truck was, therefore, entitled to coverage under the policy. The trial court stated:
 "The Court has received and reviewed all submissions by any of the parties to this action, including the Bradleys, on the issue of coverage. The Court has in addition carefully considered the arguments of all parties at the hearing.
 "At the hearing, the parties asked the Court to rule both on the summary judgment motions of Carolina Casualty *Page 1033 
and Wendell Williams, the insured, and to make a ruling with respect to coverage should any issues be left for resolution following the motion for summary judgment by Carolina Casualty. The Court now does so.
 ". . . .
 "It is not disputed that the dump truck involved in this accident is not listed on the Carolina Casualty policy. The Court finds, however, for the following reasons, that the vehicle did qualify as a temporary substitute vehicle and therefore was covered under the Carolina Casualty policy.
 "The named insureds under the policy are W W Trucking, and Wendell Williams, when he is doing business as W W Trucking. The Court can find no other explanation for the term `D/B/A' behind the name of Wendell Williams other than to restrict coverage for Mr. Williams to those occasions when his actions pertain to his sole proprietorship, W W Trucking. Had Carolina Casualty desired to make Wendell Williams an unconditional named insured, it could easily have done so by listing the named insureds as W W Trucking and Wendell Williams' with no qualifier to Mr. Williams' name.
 "The truck in question was purchased in 1992 by Williams Auto Sales. At the time of the purchase:, Williams Auto Sales was a partnership between Mr. Williams and his then-wife, Sheila. In 1994, Williams Auto Sales was incorporated and the name became Williams Auto Sales[,] Paint Body Shop, Inc. Mr. Williams testified that the assets of the partnership, including the dump truck at issue here, became assets of the new corporation. One of the purposes of Williams Auto Sales, Inc., as a corporation was to `engage in trucking business of all kinds and all aspects of the trucking business.' (Art. of Inc., Williams Auto.)
 "At the time of purchase, the title to the truck was issued in the name of Williams Trucking, not W W Trucking. The name of the owner on the truck title was never changed.
 "Mr. Williams testified through deposition that Williams Trucking was owned by Williams Auto Sales[,] Paint Body Shop, Inc., and testified that while many of the assets of Williams Auto Sales[,] Paint Body Shop, Inc., including many trucks, were transferred to him as part of the divorce settlement between himself and Sheila Williams, certain assets were not transferred. These assets include several cars and the dump truck involved in this case, all of which are kept by Mr. Williams at the truck yard from which W W Trucking operates. Mr. Williams also explained that he did not believe that W W Trucking, or himself when he was doing business as W W Trucking, owned the dump truck.
 "The Court finds that Carolina Casualty has presented no evidence that W W Trucking, or Mr. Williams when he was doing business as W W Trucking, owned the dump truck. Accordingly, the court finds that the dump truck was not owned by W W Trucking, or Mr. Williams d/b/a W W Trucking. Therefore, the dump truck is not a vehicle owned by named insured, and the first prong of the definition of a temporary substitute vehicle of the policy is met.
 "The second requirement for the vehicle to be a temporary substitute vehicle is that a vehicle listed on the policy be unavailable for use for one of several reasons, including repairs. It is not disputed that the only other dump truck on the yard is a 1992 Kenworth dump truck *Page 1034 
that is listed on the Carolina Casualty policy and it is not disputed that the 1992 Kenworth dump truck was being repaired on the day the accident occurred.
 "Because the dump truck involved in the accident was not owned by Wendell Williams d/b/a W W Trucking, nor by W W Trucking, and because it was being used as a substitute for a 1992 Kenworth dump truck that was listed on the policy and which was being repaired, the Court finds that the dump truck involved in the accident was a temporary substitute vehicle.
 "Accordingly, coverage lies under the policy for this accident. . . ."
(Emphasis in original.)
Carolina Casualty appeals, raising the following issues:
 "1. Whether an automobile or commercial vehicle titled or registered in the name of an insured's sole proprietorship, which is admittedly not covered under the insured's automobile insurance policy, may nevertheless qualify for coverage under the same policy on the grounds that it is a `non-owned' vehicle being used as a temporary substitute for an insured vehicle.
 "2. Whether the undisputed evidence sustained the trial court's ruling that the dump truck at issue in this case was in fact owned by a corporation as claimed by the insured, which would render it eligible for coverage."
(Carolina Casualty's brief, p. 12.)
 Standard of Review
"Our standard of review of this case is governed by statute. Section 12-2-7(1), Ala. Code 1975, states:
 "`[I]n deciding appeals, no weight shall be given the decision of the trial judge upon the facts where the evidence is not taken orally before the judge, but in such cases the Supreme Court shall weigh the evidence and give judgment as it deems just.'
 "In a case in which a trial court has not heard live testimony, this Court has held that `a reviewing court will not apply the presumption of correctness to a trial court's findings of fact and that the reviewing court will review the evidence de novo.' Eubanks v. Hale, 752 So.2d 1113, 1122 (Ala. 1999). Our statutory obligation in a case such as this is to `weigh the evidence and give judgment as [we] deemjust.'"
Bentley Sys., Inc. v. Intergraph Corp.,922 So.2d 61, 70-71 (Ala. 2005).
 Discussion
In order to resolve the coverage question presented in this case, we must determine the legal owner of the 1984 Mack dump truck involved in the accident. Williams asserts that Williams Auto Sales, Paint Body, Inc., a now defunct corporation, owns the 1984 Mack dump truck and that, therefore, it qualifies as a temporary substitute vehicle under the policy. Carolina Casualty argues that because the 1984 Mack dump truck is titled in the name of "Williams Trucking," one of Williams's sole proprietorships, Williams is the legal owner of that dump truck and it does not therefore qualify as a temporary substitute vehicle under the policy.
We begin by noting that, under Alabama law, the manner in which a vehicle is titled is prima facie evidence of ownership. See § 32-8-39(d), Ala. Code 1975 ("A certificate of title issued by the department [of revenue] is prima facie evidence of the facts appearing on it."); see also § 32-8-44(e), Ala. Code 1975 ("as between the parties, a transfer by an owner is not effective until the provisions of this section have been complied with"). However, *Page 1035 
a certificate of title is not the only method of establishing ownership, and the presumption of ownership established by the certificate of title is a rebuttable one. See RangerInsurance Co. v. Whitlow, 514 So.2d 1338 (Ala. 1987) (citing Congress Fin. Corp. v. Funderburk,416 So.2d 1059 (Ala.Civ.App. 1982)).
Additionally, Alabama law makes no distinction between an individual and a sole proprietorship operated by the individual. They are considered the same for legal purposes. See Clardy v. Sanders, 551 So.2d 1057, 1059-60
(Ala. 1989) (recognizing that an individual who operates a sole proprietorship is not a separate legal entity from the sole proprietorship). Couch on Insurance also reaches that same conclusion when considering the issue of nonowned vehicles for purposes of insurance coverage:
 "An automobile owned by or registered in the name of a partnership of which the insured is one of the partners is not owned by the insured-partner. Thus, the insured's policy affords coverage under a `non-owned automobile' provision. Complications may arise when the partner operates a personal vehicle. A question of fact may arise as to whether the partner was engaged in the business of the insured-partnership or personal business so as to bring the use of the personal automobile within coverage of the partnership's policy.
 "The situation is different when the insured is also a sole proprietorship. If the automobile is titled under the trade name of an insured's sole proprietorship, then the vehicle does not qualify as a `non-owned vehicle' within the terms of the insured's policy."
8A Steven Plitt et al., Couch on Insurance § 118:29 (3d ed.2004) (footnotes omitted; emphasis added). ThusCouch recognizes that when the insured is also a sole proprietorship, any vehicle titled in the name of the sole proprietorship is considered to be owned by the insured. Under those circumstances, the vehicle cannot be considered a "nonowned" vehicle for purposes of the policy.
Although the precise issue of who is the legal owner of a vehicle titled in the name of a sole proprietorship appears to be one of first impression in this State, other jurisdictions have addressed the issue. See, e.g., Providence WashingtonIns. Co. v. Valley Forge Ins. Co., 42 Cal.App.4th 1194,1199, 50 Cal.Rptr.2d 192, 194 (1996) (considering the issue of who owned a rental van titled in the name of "A-1 Rent-A-Car," a sole proprietorship, and holding that the rental van was owned by the individual operating the business and not by the business — "`[a] sole proprietorship is not a legal entity itself. Rather, the term refers to a natural person who directly owns the business. . . .'" (quoting Friedman, Cal. Practice Guide: Corporations 1 (The Ritter Group 1995))); Allstate Ins. Co. v.Willison, 885 P.2d 342, 344 (Colo. Ct. App. 1994) (a vehicle titled in the name of "Bill's Service and RV Center," a sole proprietorship, was actually owned by the sole proprietor and not by the business, and thus did not qualify for coverage under the sole proprietor's individual insurance policy, which excluded coverage for unspecified vehicles owned by the insured); Purcell v. Allstate Ins. Co.,168 Ga.App. 863, 865, 310 S.E.2d 530, 532 (1983) (construing business automobile insurance policy issued in the name of "Purcell Radiator Serv., an individual business" and recognizing that "[t]he fact that [Mr. Purcell] purchased this automobile in the name that he used in doing business does not contradict the fact that he owned the automobile as an individual");Edgley v. Lappe, 342 F.3d 884 (8th Cir.2003) (applying Minnesota law in construing insurance *Page 1036 
policy issued to "Harold and Benita Lappe d/b/a Lappes Express Cab" and holding that temporary-substitute-vehicle clause in policy, which defined a covered substitute vehicle as "any vehicle you do not own," precluded coverage for a vehicle owned by taxicab-company owners as individuals that had been substituted for a covered taxicab); Gabrelcik v. NationalIndem. Co., 269 Minn. 445, 131 N.W.2d 534 (1964) (construing automobile-liability insurance policy issued to "Mary Gabrelcik d/b/a Fridley Cab Company" and holding that because the insurance policy excluded coverage for any temporary substitute vehicle if owned by the spouse of the named insured who resided in same household, the policy afforded no coverage for an automobile owned by Mary Gabrelcik's husband and registered in the name of his used-car business that husband operated as a sole proprietorship when that automobile was loaned to Mary Gabrelcik for use as a substitute taxicab);Hall v. Auto-Owners Ins. Co., 265 Neb. 716,658 N.W.2d 711 (2003) (construing insurance policy issued to "Kenneth L. Gearhart d/b/a Kenny's Truck Repair" that provided commercial general-liability coverage and garage-liability coverage and holding that an insured was not a legal entity separate and distinct from the owner of an automobile for purposes of garage-liability coverage, which provided that such coverage did not extend to a vehicle "owned in whole or in part by the named insured," and for purposes of commercial general-liability provisions, which excluded coverage for vehicles owned by "any insured," even though insured was listed as doing business under another name); CU Lloyd's of Texas v. Hatfield, 126 S.W.3d 679 (Tex.Ct.App. 2004) (construing commercial general-liability insurance policy issued to "Mays Younglandia, Benjamin F. May d/b/a" and holding that because that policy excluded coverage for all vehicles owned by the insured and because the insured was a sole proprietorship that is legally the same as the individual proprietor, a vehicle owned by the individual proprietor was excluded from coverage under the policy); Recalde v. ITT Hartford, 254 Va. 501,492 S.E.2d 435 (1997) (construing insurance policy issued in the name of "A R Industrial Sweeping Cleaning," a sole proprietorship, in case in which owner of the sole proprietorship sought a judgment declaring that business automobile-liability coverage provided liability coverage for an accident involving the proprietor's individually owned vehicle and holding that there is no legal distinction between the proprietor and his business).
In each of these cases, the court concluded that there was no legal distinction between an individual who operated a business as a sole proprietor and the business itself. Each of these courts also recognized that a vehicle registered in the name of a sole proprietorship is deemed to belong to the individual sole proprietor. We agree with these principles.
Additionally, in Ranger Insurance Co. v. Whitlow, supra, this Court addressed the quality of the evidence required to overcome the presumption of ownership created by a certificate of title. In that case, this Court affirmed the trial court's judgment holding that the insured was driving a temporary substitute vehicle at the time of the accident. The Court stated that, although the title to the truck was in the insured's name, there was substantial proof that the insured had sold the truck to his father and had borrowed the truck as a substitute vehicle while the insured's vehicle was being repaired.
At the bench trial, the insured, his wife, and his parents testified that, before the accident, the insured had acquired a newer vehicle and that, upon doing so, he had sold the truck to his father. The insured *Page 1037 
and his family also established that, after the sale but before the accident, the parents had paid for the license tags for the truck and had paid to have the truck repainted. Based on this evidence, the trial court ruled that the truck did not belong to the insured and that, therefore, the vehicle qualified for coverage as a temporary substitute vehicle. On appeal, this Court concluded that the trial court's ruling was not plainly and palpably erroneous and affirmed the judgment in favor of the insured.
In Ranger Insurance Co., the evidence presented in support of the insured's claim was substantial enough to overcome the presumption of ownership created by the certificate of title. This Court's affirmance in that case was based on the ore tenus rule and the quality and magnitude of the evidence presented by the insured.
In the instant case, however, the ore tenus rule is not applicable; we review the evidence de novo. Our review of the evidence reveals the following:
Since the 1990s, Williams has been involved in several businesses. In the early 1990s, Williams operated a partnership by the name of "Williams Auto Sales." Williams Auto Sales was engaged in the trucking business. Additionally, the evidence appears to establish that, at some point in the 1990s, Williams was operating a sole proprietorship by the name of "Williams Trucking" or, alternatively, that Williams was in some way associated with the name "Williams Trucking."
It is also undisputed that the 1984 Mack dump truck involved in the accident was purchased in November 1992 for use by the partnership "Williams Auto Sales." It is undisputed that in December 1992 title to the dump truck was transferred from "Williams Auto Sales" to "Williams Trucking," one of Williams's sole proprietorships. Actual title to the dump truck remained in the name of "Williams Trucking" through the date of the accident.
However, Williams testified that in 1994 he and his then wife, Sheila, incorporated Williams Auto Sales under the name Williams Auto Sales, Paint Body, Inc. Williams and Sheila were the sole shareholders of the corporation, each holding 500 shares. Williams also testified that, upon the creation of the corporation in 1994 and in exchange for the issuance of the stock in the corporation to Williams and his wife, the corporation acquired the assets of "Williams Trucking," including the 1984 Mack dump truck. It is undisputed that no bill of sale exists to document the transfer of the Mack dump truck, and no other documentation of the acquisition of the dump truck by the corporation exists. Williams testified that, as of the date of the incorporation of Williams Auto Sales, Paint Body, Inc., the 1984 Mack dump truck belonged to the corporation.
At some point during the corporation's existence, Williams acquired a 1992 Kenworth dump truck.[2] Although Williams testified that this Kenworth dump truck was purchased for use by the corporation, it was titled in the name of "Williams Trucking." Williams did not explain why the 1992 Kenworth dump truck purchased during the corporation's existence was titled in the name of "Williams Trucking" rather than in the name of the corporation.
In 1998, Williams and Sheila divorced. In that same year, Williams began operating his trucking business under the name W W Trucking, a sole proprietorship. *Page 1038 
That same business is also referred to as WTW Enterprises. W W Trucking and WTW Enterprises are both trade names under which Williams operates his trucking business. He considers them to be the same business, and they operate out of the same bank account.[3]
As a result of the divorce, Williams and Sheila divided their assets. Williams testified that in the divorce settlement he acquired the trucking business while Sheila acquired their perosnal property. Williams testified that any trucks purchased since 1998 (the year of his divorce from Sheila) have been titled in name of WTW Enterprises. Williams considers himself the sole owner of any vehicles purchased or acquired after 1998.
However, Williams and Sheila did not legally dissolve the corporation; the corporation merely ceased all activities. Williams testified that the corporation has had no activity since 1998. According to Williams, the corporation has not produced any revenue and has not maintained any financial records since 1998. Williams testified that, since his divorce, all revenue generated by his business activities has been credited to WTW Enterprises.
During his deposition, the lawyer for Carolina Casualty asked Williams how those vehicles listed as "covered autos" on the Carolina Casualty insurance policy were titled. Williams responded that he did not know. He testified that, as to the vehicles he was awarded in the divorce settlement, he believed he had changed all of those titles to indicate the owner as WTW Enterprises. He stated that the serial numbers for the trucks he was awarded as part of the divorce settlement were not specified, and he was not sure if the title to all of them had been transferred to WTW Enterprises. He testified that the record could speak for itself. However, he stated that the trucks he purchased after his divorce should have been titled in the name of WTW Enterprises.
Despite Williams's claim that the assets of the corporation became his property after the divorce, Williams testified thatthe corporation continues to own the 1984 Mack dump truck and a few other vehicles. Williams believes that his ex-wife still retains an ownership interest in the 1984 Mack dump truck and the other vehicles that he claims were not addressed in the divorce settlement. He testified that, when he and Sheila divorced, they never decided what to do with those vehicles; he also testified that Sheila knows where the vehicles are located but that she has not attempted to force a sale of those vehicles.
The lawyer for Carolina Casualty also asked Williams if, other than the 1984 Mack dump truck involved in this accident, he had an ownership interest in any other vehicle — truck or otherwise — that was not specifically identified on the insurance policy. Williams testified that there were two wreckers that his daughter and her husband were using in a business they had taken over from Williams.
Williams produced a 1994 tax return for the corporation that reflected approximately $58,000 in depreciation of assets. However, Williams testified that he did not have a schedule identifying which trucks or other vehicles had been depreciated on the corporate tax return.
Although Williams acknowledged that he had taken depreciation on the 1984 Mack dump truck in the past, he had no information as to whether depreciation of the Mack dump *Page 1039 
truck had been reflected on a tax return since 1998, the year the corporation ceased operating.[4] Williams could not provide any information as to when depreciation on the 1984 Mack dump truck had last been taken and on which tax return. Williams testified that those vehicles not obtained by him in the divorce settlement were parked at the "truck shop," which is located at the same physical address of W W Trucking and is the same location where vehicles used in the business of W W Trucking and WTW Enterprises are routinely parked.
In explaining why the 1984 Mack dump truck was purchased for use by Williams Auto Sales but was titled in the name of Williams Trucking, Williams testified that Williams Auto Sales was engaged in the trucking business. Williams explained that, after he purchased the 1984 Mack dump truck in 1992, he went to the court-house to pay the sales tax on that vehicle and to have the title issued. While he was at the courthouse, someone told him that because his sole proprietorship was engaged in the business of trucking, the title to its vehicles should be in the name of "Williams Trucking." Williams later testified that, after the corporation was created, the corporation acquired Williams Trucking and Williams Trucking did business under the corporation's name.
However, at one point during his deposition, Williams denied that he ever operated a business by the name of Williams Trucking. At another point, Williams testified that Williams Trucking operated as a sole proprietorship until the corporation was created and that, upon the creation of that corporation, Williams Trucking was acquired by the corporation.
Additionally, as noted above, the 1992 Kenworth dump truck was purchased after the corporation was created, but, like the 1984 Mack dump truck, it was titled in the name of Williams Trucking. Williams testified that, despite the name shown on its certificate of title, he considered the 1992 Kenworth dump truck to belong to WTW Enterprises. However, Williams claimed that the 1984 Mack dump truck, titled in the same manner as the Kenworth dump truck, had not become the property of WTW Enterprises but that the corporation continued to own that vehicle.
Although the 1984 Mack dump truck and the 1992 Kenworth dump truck were both titled in the name of Williams Trucking, Williams identified only the 1992 Kenworth dump truck as a "covered auto" on the Carolina Casualty insurance policy; he did not specifically list the 1984 Mack dump truck as a covered vehicle under that policy. Williams testified that, on the declarations page of the Carolina Casualty insurance policy, he identified as "covered autos" only those vehicles he believed belonged solely to him.
Based on this evidence, it is undisputed that the evidence created a rebuttable presumption that Williams Trucking, a sole proprietorship operated by Williams, owned the 1984 Mack dump truck. Because a sole proprietorship is deemed to be the same entity as its owner, the evidence created a rebuttable presumption that the 1984 Mack dump truck was owned by Williams.
Williams's evidence offered to rebut that presumption consisted of bare assertions that he did not own the 1984 Mack dump truck because of undocumented business transactions among his *Page 1040 
own closely held businesses. Without some documentation or disinterested testimony to bolster Williams's claims that the Mack dump truck became or remained the property of the corporation and was not the property of the sole proprietorship, we cannot so lightly disregard the presumption of ownership that arises from the certificate of title to the Mack dump truck, which shows that it is owned not by the corporation but by Williams Trucking. A different conclusion would create and encourage uncertainty in insurance matters and business transactions.
By this holding, we do not mean to imply that testimony relating to changes in the ownership of a vehicle can never over-come the rebuttable presumption created by a certificate of title. We simply hold that, in this case, Williams's testimony, standing alone, did not rise to the level required to rebut the presumption of ownership established by the certificate of title.
Because we conclude that Williams did not overcome the presumption of ownership created by the certificate of title, the sole proprietorship of "Williams Trucking" must be deemed the owner of the 1984 Mack dump truck. Under Alabama law, Williams Trucking, a sole proprietorship, is considered the same legal entity as Williams, the individual. Therefore, Williams is deemed to own the 1984 Mack dump truck titled in the name of his sole proprietorship.
Because the Carolina Casualty insurance policy does not extend coverage as a temporary substitute vehicle to any vehicle owned by the insured, i.e., Williams, the 1984 Mack dump truck cannot qualify as a temporary substitute vehicle for purposes of the Carolina Casualty policy. Because we find no ambiguity in the policy as it relates to the temporary-substitute provision, we must enforce the terms of the insurance policy as they are written. Liggans R.V.Ctr. v. John Deere Ins. Co., 575 So.2d 567, 569
(Ala. 1991).
We conclude that the 1984 Mack dump truck is not entitled to coverage under the Carolina Casualty policy as a temporary substitute vehicle. Therefore, we reverse the judgment of the trial court. We do not address the other issues presented by this appeal because they have not been addressed by the trial court and are not properly before us. The cause is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and SEE, LYONS, HARWOOD, WOODALL, SMITH, BOLIN, and PARKER, JJ., concur.
[1] Bradley's wife also asserted a claim for loss of consortium.
[2] Williams testified that any trucks purchased after 1994 and before 1998 were purchased for use by the corporation.
[3] Williams testified that WTW Enterprises existed as a sole proprietorship before his divorce from Sheila. According to Williams, WTW Enterprises is "associated with W W Trucking now."
[4] The corporation has not filed tax returns for several years; thus, the evidence indicates that the corporation has not, as of the date of Williams's deposition, claimed depreciation on the 1984 Mack dump truck for at least several years.